**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DEMAR RAHYMES BARNES,

     Petitioner

v.

JERRY HOWELL, et al.,

     Respondents.

Case No.: 2:14-cv-01946-RFB-NJK

**ORDER**

This case is a for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Demar Rahymes Barnes. This case petition is before the Court for adjudication of the merits of Barnes' petition. The Court denies Barnes' petition, denies him a certificate of appealability, and directs the Clerk of the Court to enter judgment accordingly.

## I.   BACKGROUND

Barnes' conviction is the result of events that occurred in Clark County, Nevada on or between April 16, 2012, and May 2, 2012. ECF No. 8-1 at 2. According to Barnes' arrest report, Barnes was caring for his stepson, who was approximately two-and-a-half years old at the time, while his wife was out of town. ECF No. 22-21 at 3. Barnes told the victim's mother that on April 28, 2012, he started a bath for his stepson, and then "left the room to do other things." Id. When Barnes heard a noise, he returned to the bathroom, observed that the shower curtain had fallen, fixed the shower curtain, and then returned the victim to the bathtub, which he discovered had scalding water. Id. Several days later, the victim's mother returned home, and upon seeing her son's condition, called 911. Id. at 4.

Doctors at the University Medical Center Hospital indicated that the victim "had sustained second and third degree burns to the lower legs and the top of both feet," "second degree burns . . . on the genitals, penis, and buttocks area," and "complete sparing . . . on the bottom of both feet." Id. at 3. The victim "required surgical debridement due to the thickness of the burns" and the insertion of a "foley catheter . . . as the penis was burned and subsequently swollen, which ha[d] not allowed for proper urination." Id. The victim was also found to have a "moderately displaced right midclavicular fracture." Id. The victim's mother reported that the victim's clavicle injury may have occurred prior to her departure when the victim "fell out of [a shopping] cart landing face first on the asphalt" while in her care. Id.

On May 7, 2012, Barnes was charged with three counts of child abuse and neglect with substantial bodily harm. ECF No. 22-3. On May 31, 2012, the District Attorney filed an amended complaint charging Barnes with two counts of child abuse with substantial bodily harm and one count of child neglect resulting in substantial bodily harm. ECF No. 22-4. Barnes waived his right to a preliminary hearing and informed the court that he would enter a guilty plea to one count of child abuse resulting in substantial bodily harm. ECF No. 22-5. Pursuant to the plea agreement, the State filed an information charging Barnes with one count of child abuse with substantial bodily harm on June 25, 2012. ECF No. 8-1. Barnes signed the guilty plea agreement and pleaded guilty on June 28, 2012. ECF Nos. 8-2, 8-3. On September 25, 2012, the district court sentenced Barnes to a maximum prison term of 240 months with a minimum parole eligibility requirement of 96 months. ECF No. 22-7 at 9. The court credited Barnes with 51 days for time served and assessed $25 administrative and $150 DNA fees. Id. The court memorialized Barnes' sentence in the October 2, 2012 Judgment of Conviction. ECF No. 8-4.

Barnes filed a Notice of Appeal on October 10, 2012. ECF No. 22-9. Barnes also filed a Fast Track Statement on February 7, 2013. ECF No. 8-5. The Nevada Supreme Court affirmed Barnes' conviction on June 13, 2013. ECF No. 22-12. Remittitur issued on July 11, 2013. ECF No. 22-13.

Barnes filed a state habeas corpus petition on September 26, 2013. ECF No. 8-6. The state court denied the petition on January 14, 2014. ECF No. 22-15. Barnes appealed, and the Nevada Supreme Court affirmed on June 11, 2014. ECF No. 22-18. Remittitur issued on July 8, 2014. ECF No. 22-19.

Barnes' federal habeas corpus petition was dispatched on November 17, 2014 and was filed on June 29, 2015. ECF No. 6. Respondents moved to dismiss Barnes' Petition on August 6, 2015. ECF No. 7. This court granted counsel for Barnes and denied Respondents' motion to dismiss without prejudice. ECF No. 11. Barnes filed a counseled, first amended petition on September 29, 2016. ECF No. 21. Respondents again moved for dismissal, which this court denied. ECF Nos. 25, 34. Respondents answered Barnes' petition on May 4, 2018. ECF No. 36. Barnes replied on November 2, 2018. ECF No. 44.

Barnes alleges that his plea was not entered into knowingly and voluntarily, in violation of his federal constitutional rights, because:

1. He did not understand his right to a jury trial.
2. He possessed an incomplete understanding of the plea agreement.
3. His trial counsel misled him about the count to which he pleaded guilty and the probable sentencing consequence of his plea.
4. His trial counsel advised him to waive his preliminary hearing and plead guilty without conducting an investigation of the case or acquiring all discovery.

ECF No. 21 at 7.

3

## II.     STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000), and citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75 (quoting Williams, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable." Id. (quoting Williams, 529 U.S. at 409-10) (internal citation omitted).

1    The Supreme Court has instructed that "[a] state court's determination that a claim lacks

2    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

3    correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing

4    Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a

5    strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

6    at 102 (citing Lockyer, 538 U.S. at 75); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011)

7    (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating

8    state-court rulings, which demands that state-court decisions be given the benefit of the doubt"

9    (internal quotation marks and citations omitted)).

10   **III.    DISCUSSION**

11   Barnes alleges one ground for relief: his guilty plea was not entered into knowingly and

12   voluntarily. ECF No. 21 at 7. Barnes' sole ground for relief contains four subparts, each of which

13   will be addressed in turn. Id. First, however, Respondents argue that this ground is unexhausted

14   because Barnes' state habeas petition raised nine grounds of ineffective assistance of counsel but

15   did not present a claim that his guilty plea was not knowing and voluntary. ECF No. 36 at 14-16.

16   It is noted that Respondents failed to raise this exhaustion issue in their motion to dismiss. See

17   ECF No. 25 at 5 (only arguing that three of Barnes' claims were time barred).

18   This court is unpersuaded that Barnes' ground for relief is unexhausted. To be sure, Barnes'

19   state habeas petition included only claims of ineffective assistance of counsel. See ECF No. 8-6 at

20   11-19. However, while there are differences between Barnes' state habeas claims and his federal

21   habeas claim, it can be concluded that Barnes state habeas claims are the "substantial equivalent"

22   of his federal claim. Cf. Picard v. Connor, 404 U.S. 270, 278 (1971) (concluding that a claim

23   seeking federal habeas corpus relief based on a theory "that an indictment is invalid is not the

substantial equivalent of a claim that it results in an unconstitutional discrimination" because "the substance of [the] federal habeas corpus claim [was not] first . . . presented to the state courts"). That is, comparing the relevant portions of Barnes' state habeas claims with Barnes' federal claim demonstrates that the factual allegations are essentially the same. <u>Compare</u> ECF No. 8-6, <u>with</u> ECF No. 21. Further, this Court previously "acknowledge[d] that Barnes[' amended federal petition] brings . . . claims under the Fifth and Sixth Amendment . . . although [only] the Sixth Amendment was raised in state post-conviction proceedings." ECF No. 34 at 6-7. However, this Court did not take issue with this discrepancy. <u>Id.</u>; <u>see</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). Accordingly, because Barnes' state claims that his trial counsel was ineffective due to his actions surrounding the plea encompasses his federal claim that his plea was not entered knowingly and voluntarily, the substance of Barnes' federal claim was presented to the state courts, such that Respondents' contention that Barnes' petition is unexhausted lacks merit. <u>See</u> <u>Lopez v. Schriro</u>, 491 F.3d 1029, 1041 (9th Cir. 2007) (concluding that the district court erred in determining that the petitioner's federal claim was unexhausted because the petitioner's state claim made the same general allegations as his federal claim and his federal claim "sufficiently alleged the deprivation of a constitutional right").

### A.   Legal Standard

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent, and voluntary. <u>See</u> <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970); <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969); <u>United States v. Delgado-Ramos</u>, 635 F.3d 1237, 1239 (9th Cir. 2011). "The voluntariness of [a petitioner's] plea can be determined only by considering all

of the relevant circumstances surrounding it." <u>Brady</u>, 397 U.S. at 749. Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

<u>Id.</u> at 755 (quoting <u>Shelton v. United States</u>, 246 F.2d 571, 572 n.2 (5th Cir. 1957), <u>rev'd</u> <u>on other grounds</u>, 356 U.S. 26 (1958)); <u>see also</u> <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970) (noting that the longstanding "test for determining the validity of guilty pleas" is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant"); <u>United States v. Doe</u>, 155 F.3d 1070, 1074 (9th Cir. 1998) ("A waiver is voluntary if, under the totality of the circumstances, [it] was the product of a free and deliberate choice rather than coercion or improper inducement."). A guilty plea is not rendered invalid when it has been "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." <u>Brady</u>, 397 U.S. at 750.

In <u>Blackledge v. Allison</u>, the Supreme Court addressed the evidentiary weight of the record of a plea proceeding when the plea is subsequently subject to a collateral challenge. 431 U.S. 63 (1977). While noting that "the barrier of the plea . . . proceeding record . . . is not invariably insurmountable" when challenging the voluntariness of his plea, the Court stated that, nonetheless, the defendant's representations, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." <u>Id.</u> at 74; <u>see also Muth v.</u>

Fondren, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong presumption of truth."); Little v. Crawford, 449 F.3d 1075, 1081 (9th Cir. 2006).

**B.      Subpart A**

In Subpart A, Barnes alleges that his guilty plea was not entered into knowingly and voluntarily because he is a foreign national and did not understand the United States' legal system including his right to a jury trial. ECF No. 21 at 7. Barnes explains that he is a Jamaican citizen, was only twenty-one years old at the time of his plea, had a limited education, and did not understand American English well. Id. at 18. In Barnes' state habeas appeal, the Nevada Supreme Court held:

> Appellant failed to demonstrate that he could not understand the proceedings. Appellant is a native of Jamaica and his language is English. During the plea canvass and sentencing, appellant answered all of the questions asked of him appropriately. Further, the district court specifically asked appellant if he read, wrote, and understood the English language, which appellant answered in the affirmative. Therefore, the district court did not err in denying this claim.

ECF No. 22-18 at 3-4. This ruling was reasonable.

In addition to asserting that his plea was not entered into knowingly and voluntarily, the facts of Subpart A also appear to allege that Barnes did not competently enter his plea due to his alleged language barrier and limited education. A criminal defendant may not plead guilty unless he does so competently. Godinez v. Moran, 509 U.S. 389, 396 (1993). In order to meet these standards to plead guilty, it must be determined "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and a 'rational as well as factual understanding of the proceedings against him.'" Id. (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)). The record supports a finding that Barnes met these standards along with the standards assessing whether his plea was knowing and voluntary.

1    Accordingly, the Nevada Supreme Court's finding that Barnes failed to demonstrate that he could

2    not understand the proceedings was reasonable.

3        During the plea canvass, Barnes explained that he was twenty years old, went through

4    Eleventh grade in school, and understood the English language. ECF No. 8-3 at 3; <u>see</u> <u>also</u> ECF

5    No. 22-6 at 3 (psychological evaluation by Greg Harder, Psy.D., which provided that Barnes "is a

6    high school graduate. He denied any significant behavior problems or academic problems while

7    he was in school. He denied having any learning problems or being in special education"). Barnes

8    also stated that he understood that "by pleading guilty [he was] giving up the Constitutional rights

9    listed in th[e plea] agreement." ECF No. 8-3 at 5; <u>see</u> <u>also</u> ECF No. 8-2 at 5 (Barnes' plea

10    agreement, which provided that he "underst[oo]d that [he was] waiving and forever giving up the

11    following rights and privileges: . . . [t]he constitutional right to a speedy and public trial by an

12    impartial jury"). Due to these representations made by Barnes, as well as the state district court's

13    "accept[ance of his] plea as being freely and voluntarily entered into," (ECF No. 8-3 at 6), Barnes

14    fails to demonstrate that he lacked a "rational as well as factual understanding of the proceedings

15    against him," <u>Dusky</u>, 362 U.S. at 402, or that his guilty plea was not entered into knowingly and

16    voluntarily, <u>Brady</u>, 397 U.S. at 748. Indeed, contrary to Barnes' assertions, his representations

17    during the canvass clearly demonstrated that he understood the rights he was giving up, including

18    the right to a jury trial. <u>See</u> <u>Blackledge</u>, 431 U.S. at 74 (a defendant's representations "constitute

19    a formidable barrier in any subsequent collateral proceeding[ ]").

20        Thus, because the Nevada Supreme Court reasonably denied Barnes' state habeas appeal,

21    which included the substantial equivalent of this subpart of his federal petition, Barnes is denied

22    federal habeas relief for Ground One, Subpart A.

23

C.      **Subpart B and C**

In Subpart B, Barnes alleges that his guilty plea was not entered into knowingly and voluntarily because he possessed an incomplete understanding of the contents and nature of the plea agreement. ECF No. 21 at 7. Similarly, in Subpart C, Barnes alleges that his guilty plea was not entered into knowingly and voluntarily because he was misled about the count to which he was pleading guilty and the probable sentencing consequence of his plea. Id. Barnes elaborates that his trial counsel informed him that he would receive probation under the terms of his plea agreement and improperly informed him that he was pleading to the gross misdemeanor offense. Id. at 19. In Barnes' state habeas appeal, the Nevada Supreme Court held:

> First, appellant was informed in the guilty plea agreement and by the district court during the plea canvass that sentencing was up to the district court. Further, appellant stated to the district court during the plea canvass that he was not promised a specific sentence. Second, appellant was informed of the waiver of the right to trial by jury in the guilty plea agreement, which appellant indicated that he had read and understood, and by the district court during the plea canvass. Therefore, the district court did not err in denying this claim.

> . . . Appellant was informed numerous times that he was pleading guilty to a category B felony. When he waived his preliminary hearing, the negotiations placed on the record at that hearing informed appellant that he was pleading to the felony. Further, appellant's plea agreement informed him he was agreeing to plead guilty to a category B felony. The district court specifically asked him if he understood he was pleading guilty to a category B felony, and appellant answered in the affirmative. Therefore, the district court did not err in denying this claim.

ECF No. 22-18 at 4-5. These rulings were reasonable.

The Supreme Court has held that a guilty plea "would be invalid if [the defendant] had not been aware of the nature of the charges against him, including the elements of the . . . charge to which he pleaded guilty." Bradshaw v. Stumpf, 545 U.S. 175, 182-83 (2005); see also Henderson v. Morgan, 426 U.S. 637, 645 (1976) (explaining that a "plea could not be voluntary in the sense that it constituted an intelligent admission that [the defendant] committed the offense unless the

1   defendant received 'real notice of the true nature of the charge against him'" (quoting <u>Smith v.</u>

2   <u>O'Grady</u>, 312 U.S. 329, 334 (1941)); <u>McCarthy v. United States</u>, 394 U.S. 459, 466 (1969)

3   ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot

4   be truly voluntary unless the defendant possesses an understanding of the law in relation to the

5   facts."); <u>Boykin</u>, 395 U.S. at 243–44 ("What is at stake for an accused facing death or

6   imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter

7   with the accused to make sure he has a full understanding of what the plea connotes and of its

8   consequence."). "[T]he constitutional prerequisite of a valid plea may be satisfied where the record

9   accurately reflects that the nature of the charge and the elements of the crime were explained to

10  the defendant by his own, competent counsel." <u>Bradshaw</u>, 545 U.S. at 183.

11          During the plea canvass, Barnes explained that he read the plea agreement, understood the

12  plea agreement, and was able to ask his trial counsel any questions he had about the plea

13  agreement. ECF No. 8-3 at 4-5. Specifically, Barnes explained that he understood he was "being

14  charged with child abuse with substantial bodily harm, a category B felony"; he understood that

15  "as a consequence of [his] plea the Court must sentence [him] to the Nevada Department of

16  Corrections for a term not less than two years and not more than twenty years"; he understood that

17  he was "not eligible for probation unless an evaluation certifie[d] that [he] d[id] not represent a

18  high risk to re-offend"; and he understood that "sentencing is strictly up to the Court so nobody

19  c[ould] promise [him] probation, leniency, or special treatment." <u>Id</u>. at 3-4. Finally, Barnes stated

20  that he was "pleading guilty because . . . [he] willfully, unlawfully, feloniously, and knowingly did

21  neglect, cause, or permit a child . . . to suffer unjustifiable physical pain." <u>Id.</u> at 5-6.

22          Similarly, the plea agreement signed by Barnes provides that he "underst[ood] that as a

23  consequence of [his] plea of guilty the Court must sentence [him] to imprisonment in the Nevada

Department of Corrections for a minimum term of not less than two (2) years and a maximum of not more than twenty (20) years"; he "underst[oo]d that [he was] not eligible for probation unless a psychologist licensed to practice in Nevada or a psychiatrist licensed to practice medicine in Nevada certifie[d] that [he did] not represent a high risk to reoffend"; he was not "promised or guaranteed any particular sentence by anyone"; he "discussed the elements of all of the original charge(s) against [him] with [his] attorney and [he] underst[oo]d the nature of the charge(s) against [him]"; and his "attorney . . . answered all [his] questions regarding th[e] guilty plea agreement and its consequences." ECF No. 8-2 at 3-6. Likewise, Barnes' trial counsel certified that he "ha[d] advised [Barnes] of the penalties for each charge" and that "[t]o the best of [his] knowledge and belief, [Barnes was] competent and underst[ood] the charges and the consequences of pleading guilty." Id. at 7.

These facts demonstrate that the Nevada Supreme Court reasonably concluded that Barnes understood the plea agreement, the count remaining in the criminal information, and his possible sentence. Indeed, Barnes specifically represented that he understood the plea agreement, that he was being charged with a felony, and that he faced a possible sentence of two to twenty years in prison. ECF No. 8-3 at 4-5; ECF No. 8-2 at 3-6. Therefore, because the state district court carefully canvassed Barnes to make sure he had a full understanding of the charges, consequences, and plea itself, Boykin, 395 U.S. at 243-44, Barnes fails to demonstrate that his plea was not knowing or voluntary. Brady, 397 U.S. at 748; see also Blackledge, 431 U.S. at 74. Thus, because the Nevada Supreme Court reasonably denied Barnes' state habeas appeal, which included the substantial equivalent of this subpart of his federal petition, Barnes is denied federal habeas relief for Ground One, Subpart B and C.

**D.**      **Subpart D**

In Subpart D, Barnes alleges that his guilty plea was not entered into knowingly and voluntarily because his counsel advised him to waive his preliminary hearing and plead guilty without investigating the case or acquiring all discovery. ECF No. 21 at 7. Barnes alleges that his trial counsel should have interviewed his wife, who advised Barnes against seeking medical treatment and who proved that he did not break the victim's clavicle. Id. at 16. Additionally, Barnes alleges that his trial counsel should have consulted with a medical expert to determine whether it is possible that the victim's injuries could have been caused by negligent care and not direct intentional infliction, interviewed the doctor who treated the victim, and examined the medical reports and photographs that Barnes took of the victim after the incident. Id. at 17. In Barnes' state habeas appeal, the Nevada Supreme Court held:

> First, appellant agreed to plead guilty before the preliminary hearing which negated counsel's duty to investigate further. Second, the child victim was severely burned while in the sole care and custody of appellant. Appellant also failed to get the victim necessary medical treatment and appellant's treatment of the victim made the injury much worse. Therefore, appellant failed to demonstrate a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial had counsel further investigated, and the district court did not err in denying this claim.

ECF No. 22-18 at 3. This ruling was reasonable.

During a pretrial hearing, Barnes' trial counsel explained that Barnes was waiving his right to a preliminary hearing because "he'll be entering a plea of guilty to one count Child Abuse Resulting in Substantial Bodily Harm." ECF No. 22-5 at 3. Barnes acknowledged acceptance of this agreement, and the state district court sent Barnes' case "to District Court where [he would] enter [his] plea." Id. at 3-4. Because Barnes pleaded guilty to one count of child abuse resulting in substantial bodily harm, the other count of child abuse resulting in substantial bodily harm and

count of child neglect resulting in substantial bodily harm were dismissed. Compare ECF No. 22-4 with ECF No. 8-1. Even if the preliminary hearing was not held and discovery and investigations were not complete, the arrest report and voluntary statements of Barnes, the victim's mother, and a neighbor were damaging for Barnes and were sufficient for Barnes and his trial counsel to have been able to assess his risk of being convicted of three felonies if he went to trial. See ECF No. 22-21, 22-22, 22-23, 22-24; cf. Premo v. Moore, 562 U.S. 115, 124 (2011) ("The opportunities [of an early plea] include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea if the case grows stronger and prosecutors find stiffened resolve."). Thus, the Nevada Supreme Court reasonably concluded that the facts of the case failed to show that further investigation would have altered Barnes' decision to plead guilty. Accordingly, after "considering all of the relevant circumstances surrounding" Barnes' plea, Barnes has failed to demonstrate that his guilty plea was not knowing or voluntary simply because it was made prior to the investigation of further evidence. Brady, 397 U.S. at 749.

Therefore, because the Nevada Supreme Court reasonably denied Barnes' state habeas appeal, which included the substantial equivalent of this subpart of his federal petition, Barnes is denied federal habeas relief for Ground One, Subpart D.[1]

---

[1] Barnes requests that this Court hold an evidentiary hearing "at which proof may be offered concerning the allegations" in his petition. ECF No. 21 at 21. In support of his request, Barnes notes that there was little factual development at the state level. ECF No. 44 at 10-11. This Court acknowledges that the state district court did not hold an evidentiary hearing on Barnes' state habeas petition. However, beyond Barnes' testimony, which should mirror the statements in his petition, and his trial counsel's testimony, which should mirror his certification contained in the plea agreement, it is unclear what further evidence would be presented. Moreover, this Court has already determined that Barnes is not entitled to relief based primarily on his representations during the plea canvass and in the plea agreement, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would alter these representations nor

**IV.    CERTIFICATE OF APPEALABILITY**

This is a final order adverse to Barnes. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. See 28 U.S.C. § 2253(c); Turner v. Calderon, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal citation omitted). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. Id. Applying these standards, this Court finds that a certificate of appealability is unwarranted.

**V.    CONCLUSION**

**IT IS THEREFORE ORDERED** that the First Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 21) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Jerry Howell for D.W. Neven as the Respondent warden on the docket for his case.

/ / /

---

affect this Court's reasons for denying Barnes' petition. Accordingly, Barnes' request for an evidentiary hearing is denied.

1      **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment

2  accordingly.

3      Dated: July 13, 2020.

4                                                    _____

5                                                    **RICHARD F. BOULWARE, II**
                                                     **UNITED STATES DISTRICT JUDGE**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23